18-1278 Alonzo Bullman et al. v. City of Detroit MI et al. Arguments not to exceed 15 minutes per side. Ms. Fagans for Matthew Bray and Nico Hurd. Good morning, Your Honor. May it please the Court, my name is Linda Fagans and I'm appearing on behalf of Officers Bray and Hurd. I'd like to reserve two minutes. Your Honor, the position of the defendant, the reversible error occurred in this case by the district court for three reasons. I'll just highlight them. First of all, the court erred in finding that there wasn't a reasonable suspicion for stop of the vehicle and that probable cause existed to search the car. Secondly, our position is reversible error exists because there was no clearly established right that a police officer during a drug raid faced with two pit bull dogs biting and barking. He had noticed that their shooting of this dog amounted to a seizure in violation of the Fourth Amendment for the two pit bulls. And thirdly, our position is, again, is closely related, is that at the time of this incident in January of 2016 before Brown came, there was no clearly established law that a unlicensed dog, an unlicensed dog, constituted a property interest that warranted protection under the Fourth Amendment. Addressing the first issue, that the district court erred in this case determining that reasonable suspicion did not exist. In this particular case, the district court judge just ruled that there was only a hunch of a fear of ambush. This stop occurred during the drug raid. During the drug raid, they were bringing out evidence, 26 marijuana plants. They had a search warrant where they had determined that the confidential informant had determined that he observed that a transaction. He tried to do a transaction and he saw a transaction. He saw marijuana in bags. The officers also had already surveyed this and saw two transactions. So looking at the context of this, you see Bullman driving around this house four times. Four times, talking on the cell phone, circling in the context of this. Now, reasonable suspicion must have articulables, specific reasons that would create a rational inference of the facts that warrant investigating the stop. And our position is that the cases that we've cited show that unusual driving in an area of activity or criminal activity can create reasonable suspicion. The cases we've cited, just like slowing down and driving less than the particular speed limit and stopping everyone, could be a reasonable inference that in a particular area where there's drugs or where some drug activity is going on. Excuse me, Counselor, that's just the first half of the test, right? Our Campbell case from 2008 teaches that there has to be the particularized and objective basis for the stop. Yes. But then the question becomes whether the detention, which was part of the stop, was reasonably related in scope to the circumstances of the stop. So how do you explain the propriety of the detention? Your Honor, what happened was when the car stopped and the officer heard approach the vehicle, they smelled marijuana. Well, we don't know if they smelled marijuana or not. Mr. Bullman denies that there was any marijuana, and they didn't find marijuana. So it is quite possible that the officers did not, in fact, smell marijuana, but that was merely something they said in order to justify their conduct. Well, Your Honor, in this case, just because they didn't find it, as we know, police officers— But, I mean, we're not to make credibility determinations here, and there's some indication that there wasn't any marijuana there and they could not possibly have smelled the marijuana. Your Honor, he said he smelled the fresh, burnt—for all we know, that he could have finished the marijuana. But we're not—the district court did not articulate it this way, but I think the fundamental problem in this case is several unrecognized factual disputes that preclude findings of qualified immunity at this point in time on at least a couple of the issues. And this is the first that we'll talk about. Your Honor, but your cases have clearly held, and they weren't based on whether you find the marijuana, that marijuana gives probable cause for the police to search— Yes, they smelled it. They did smell. Well, how do we know? Well, how do you know in the other cases? What you base it on is on the fact that it is— I base it on the fact that, one, no marijuana was found. Mr. Buhlmann said there was no marijuana there. And in my mind, that creates a fact dispute about whether they did smell marijuana or whether that was merely a convenient thing to say to justify their actions, even though it was untrue. Your Honor, our position is that the officers, there's nothing in there to indicate that they lied, and the fact that existence that you—the point is that they have articulable facts to stop and then do the search here in this particular case. And then, indeed, that even if he had a mistaken judgment, we believe that he was still entitled to qualified immunity under this particular case. There's no reason. These are—this was a narcotics officer who knows the smell of marijuana, and he said it was a— Well, there were marijuana plants supposedly outside in front of the home, correct? Because that's what they brought out. They were bringing out—yes, that's true. Your Honor, and so then if you believe— How did they destroy that marijuana? Your Honor, I don't know. Did they burn it? That's not in the record, what they did. They probably wouldn't have burned it on the spot. One would think not. One would think not, but they're saying, I smell marijuana near your car, and there are marijuana plants in the front yard of the house. That's not in the record, so that's speculative. It is in the record that they were taking marijuana out of the counselor. Let me ask my question, please. She's not talking about what they did with it. If you'll listen and not interrupt her, maybe you can ascertain what she is saying. The testimony in the record was they brought the marijuana plants out of the house and that they were in front of the home when the man drove by. So we know that there was marijuana out in front of the house. Isn't that correct? Yes. Yes, yes. So now the question becomes, where is the scent of marijuana coming from? Then we would argue they made a reasonable mistake, but my best on the experience of this narcotic officer is that he smelled it coming from the car. Your Honor, I would like to go to the second issue, please. The second issue is here is that the trial court erred that the parties are entitled, and it's a reversible error here, is that they're arguing, first of all, our position is that the Fourth Amendment claim here of unconstitutional seizure, that at this time there was no clearly established law that told Officer Bray that owners of an unlicensed pit bull had a constitutionally cosmopolitan property interest in their dog. Why? First of all, Your Honor, they will rely on, plaintiffs rely on Brown. This case happened in January. Is it Officer Bray's position that he could shoot the dog without regard to the dog's prior actions, that he just had a right to shoot a dog? No, he did not. No, he did not, Your Honor. I think the case is clear in this particular case. They were entering a search warrant. They came in, the dogs, when you come into a drug raid, and when you're looking at this, you have to look at the context of qualified immunity and the factual situation of a reasonable officer involved in a drug raid. They got a search warrant. When they came in there, the dogs were in what's in the kitchen behind a plywood, four feet. The officers were there to secure the whole perimeters. They don't know whether evidence is being destroyed. They don't know if anybody else is there. They have a right to secure and take control over the premises here. And that included a right to shoot the dog? No, it did not. And there's never been the officer's position that you can just shoot a dog. Well, wouldn't you? License. Isn't there a con? Here's another contested fact. The dog's conduct prior to the time they were shot, if the dogs were there peacefully, as there is testimony in the record, then the officer wouldn't have been justified in just shooting the dog on the spot, would he? Your Honor, those dogs were not there peacefully. The officers said they weren't there peacefully. Other evidence in the record says they were. Your Honor, we're looking in qualifying immunity from the eyes of a reasonable police officer. First of all, these were pit bulls. We're also, for these purposes, taking everything in the facts most favorable to the plaintiff. Even taking them to the facts favorable, Your Honor. First of all, pit bulls are put in these houses where drugs are as guard dogs. They are chosen for that particular person because of their viciousness. And while we did not cite this in our brief, if you look at the cases, United States v. Sutton, I can give you, I wrote them down, I don't know if I see them right now, three cases, talk about the whole reason why people use pit bulls, because they're like gambling. I'm reading a whole lot of stuff these days from the pit bull rehabilitation folks who want to tell us how sweet they are. I mean, there's a lot of propaganda like that out there, just like there's stuff out there about the viciousness of pit bulls. But now pit bulls are being restyled as wonderful pets. Your Honor, but we're still looking at it from the tone of a reasonable officer in this particular case. And you said that... I'm sorry, is it your position that because they're pit bulls, the officer can kill them? No. Your Honor, I'm just parting this as part of the facts of what kind of dog it was. Our position is not that you can just randomly shoot any dog. Our position is twofold, that an unlicensed dog has no constitution to protect it. Is there any evidence that the officer knew the dog was unlicensed? No. I don't know whether he... So what does the licensing dispute really have to do with this case? Because at the very least, the officer would have to know the dog was unlicensed. Your Honor, he had no collars on, and you have to wear collars, so that's an indication of licensing. Well, the dog is within his home. Your Honor, I know there are a number of pet lovers of dogs, and we're not trying to destroy here. What we're talking about is whether a reasonable officer in this particular case faced in a drug rape. And our position is this, is that there was no clearly established law that the owner of a licensed dog had a constitutional property right. Let me ask you about Michigan law. Okay. Section 287262A of the Michigan Dog Law, it says that the state may kill an unlicensed dog, but not unless they have issued a summons to the dog owner to show cause why the dog should not be killed upon a sworn complaint that the dog committed certain acts. How can it be that the Michigan law says, we may kill an unlicensed dog after you have been noticed and after you have appeared before the court? Doesn't that entail the obviousness of a property interest in that dog? But is it a form of amnesty? And the process under which the owner could be deprived of his property. Your Honor. What else could that law mean? But you have a property interest, and here's how we're going to take it away from you. And that's Michigan law. I'm sorry. I think your time's up. So answer this question. I would like to ask a couple questions. Well, let's let her answer Judge Strange's question, and then we'll go to your questions. I thought you were going to answer Judge Strange's question. No. Yes. She's stopped me. Will you repeat your question? The time is up. I'm sorry. I didn't mean to interrupt you trying to thought. The existing law in Michigan indicates that you can't kill an unlicensed dog without due process. That indicates that there is an ownership and a property interest in dogs. In light of Michigan law, you can't kill an unlicensed dog because there is a property interest in that dog. You can't kill that animal without recognizing that property interest. That's Michigan law. So how could they shoot the dog on the basis that I can kill any unlicensed dog because there's no property interest in it? Your Honor, our position here, and we take the vigorous dissent in Nikita Smith of the judge here, that it still wasn't clear in Michigan. But I don't think we have to address that issue. The issue here is whether or not there was a qualified immunity that, in this particular case, whether the police reasonably believed here that they were in imminent harm of being bit in danger. And our position is the police officer testified that the dogs were barking, they were jumping, they kept trying to jump over. He could not clear the rooms to go to check and secure the premises here. And I think on the totality, on the circumstances, looking from a reasonable police officer, and I think people, and if reasonable police officers would disagree, they're entitled to qualified immunity here. Because even Brown establishes that if they believe there's a reasonable threat. And I want to point something out in Brown. In Brown, which people don't emphasize, Mark Brown there stated there, oh, my dogs did not bark. Yes, they were standing in the window. My dogs did not bark. And one of the dogs never barked since I've had them. Now, the court could have got hung up on that, but they realized that that wasn't a really material issue of fact. Now, that was a factual thing. He's trying to say his dogs didn't do what the police officer said that they did in that particular case. But the court looked at the situation from the police officer's position in this particular drug case of theirs. It didn't get lost on this point just because one person said, no, my dogs, I could have secured them. The law doesn't say at that particular time, we're saying that the law was not clear in Detroit, just clear in Detroit. Excuse me, clear in Michigan or clear in the Sixth Circuit. Even Hartwick City. I have two or three questions, and I'd like to ask them. Sure. Because I'm trying to figure out what we have to decide. If we agree with you that the officers get qualified immunity based on the threat of the dogs, then we don't have to get into the whole business of a property interest. Right? Right. Let's assume that we disagree with you, just so I can talk about the other issue. All right? Assume that we disagree with you that there's an issue of fact as to how much of a danger these dogs posed to the officers. Okay? Then we get into the question of what you can do with an unlicensed dog, regardless of whether they're trying to attack you. Am I right so far? What our position is is that- I'm asking you whether I'm right so far. Yes. Okay? Then we go to this other issue. And the other issue, according to this Smith case, I recognize that's an unpublished opinion, says that there's this-they say even if you reject their argument about the ability to shoot a dog that's not threatening you but who is unlicensed, right? That you can-the result would be the same, they say, because under Supreme Court precedent, the Smith panel found that a warrantless seizure of contraband may still be unreasonable if it was not immediately apparent to an officer that the item was contraband. Do you agree with that? That you can't rely on this contraband basis for saying you can seize the dog if the person who's acting isn't-what is it? Immediately-it isn't immediately apparent to that person that it is contraband. They have to have a basis for knowing that it's contraband, right? Is that right or not? If you're following your reasoning, however. What's your other question? However. Is that right or is that wrong? Well, Your Honor, our position is- I think you ought to be able to answer whether he said what he said is right or whether it is wrong. That's kind of a yes-no answer before you go to the explanation. Thank you, Your Honor. Your Honor, it is correct that if you accept Nikita Smith's argument in that case that you need to know that it is contraband in this particular case. But as Judge- That's what the court said. That's what the court said. But the strongest said, no, is that they didn't have anything. So they didn't have collars, so they could reasonably assume that they didn't have license. That's my next question, but I want to get to that question. Okay. But I can't get to it unless you go along the steps with me, right? Okay. You're saying it is true that it has to be immediately apparent. That it's contraband. That it's contraband, right? So if it's not immediately apparent that it's contraband, then you would agree that that's not an alternative basis for qualified immunity if you lose on the first issue, which is what we're assuming for the moment, all right? That's true, right? No, I don't. And let me say why. Okay. So I can give you a note. Our belief is, and I know people don't like the argument about calling it contraband. Nevertheless, you don't even have to get to that issue because our position is there's no clear established law in this particular here, in this case, that said that shooting the unlicensed dog violated the Fourth Amendment. As I said before, Brown came out. I'm trying to see whether we have to get to that issue. You just want to go to the issue. But I'm a judge up here. I get to see whether I have to go to that issue or not, right? If you're required, two things are required in order to shoot him. One, he's unlicensed. And two, you had a reasonable basis for knowing that he was unlicensed. If one of them doesn't exist, I don't have to go and ask the other question. That's just legal analysis, right? That doesn't have anything to do with the substance of it. I'm just saying we don't need to reach that issue. If the other issue, there's nothing in the record that supports that he knew and he has to know. I thought you were saying, yeah, he does have to know or whatever the standard is. I would agree. And there's nothing in the record that says he did know or he did not, Your Honor. And I have to admit that. If that's true, then why shouldn't we just say we don't need to get into all this business about whether you have a license or not is clearly established basis for seizing the dog when legally they can't exercise that authority if it's not immediately apparent. And as you say, there's nothing in the record which indicates that it's immediately apparent that he was not licensed. Most people presumably comply with the law. And if they have a dog in their house, it's licensed unless you have some basis for knowing that it's unlicensed. It just seems to me that's an easy way. It doesn't result in succeeding in your case. But you always have this other issue about whether there was truly a danger or not and how thick the plywood is and so forth. But assuming you get past that, I don't see how you can argue that there's a right to shoot a dog because it's later determined that he was unlicensed. You're not arguing that, are you? Your Honor, my position is that there was no clearly established right not to. There was no precedent here. First of all, Brown asked about the specific question of whether your argument that being unlicensed means you can shoot him regardless of whether he's a threat isn't qualified by the requirement that you have some knowledge that he's unlicensed. Your Honor, our position is you just can't . . . Can you just answer that yes, that that's my position, or no, it's not my position, before you go on? We're badly over your time, and you need to help us out here by listening very specifically to what Judge Rogers is asking you and answering only that question, and then he can move on to his next question, and maybe we will get to the other lawyers who may have planes to catch or whatever in a more timely way. Your Honor, would you repeat your last question again? If there's no evidence that the person who's seizing the dog knew that it was contraband, does that mean that you can't use that as a basis for saying that you can seize the contraband? If he didn't know that it was contraband, it doesn't make sense, and that's certainly what the majority in Smith said, I think, is that it's got to be immediately apparent to you, immediately apparent, not later apparent. That's what I'm asking. Do you have to know at the time you seize him that he's unlicensed, or can you shoot him and find out later that he's unlicensed? No, you can't, Your Honor, and I'm not saying that. I just want to . . . Well, that helps me. Thank you. Thank you. Judge Gibbons, may it please the Court. Dan Weininger on behalf of the police in this case. Smith came out as a panel decision from the circuit in October of 2018. It postdated our briefing in this case. But Smith is clearly established law of this circuit, and when opposing counsel references that there was no clearly established law for the officers to follow in this case, I'd like to draw the Court's attention to the fact that the shooting in Smith happened merely two weeks before the shooting in this case, in January 2016. Now, wait a minute. We look at the time the decision of the Court came out, because that's what gives notice to defendants in these cases in which . . . these 1983 cases in which qualified immunity is a defense. But you looked at the law as it was at the time of the incidents in question, and he isn't given notice by the actions that underlie. He's given notice by the Court opinion. That's . . . And I believe there's a good deal of case law to that effect. Absolutely. If I may, there is a slight modification to that, and that is Smith held itself that this right was clearly established, and Smith then references an action . . . That may be that it wasn't Smith that clearly established the law, but some earlier person. But Smith also said in that particular case that it was clearly established. So Smith holds for the proposition that in January 2016, specifically January 14 . . . I'm sorry. I interrupted you prematurely when you knew where you were going. So Smith is holding . . . granted, and I want to make this clear to the panel. Smith is a case from October of 2018. That's absolutely true. But Smith says that it was clearly established as of January 14. Let's make sure we . . . okay. You're okay. Okay. So in that regard, that counters what opposing counsel said. It was clearly established on January 27, 2016, which is the date of the shooting and the killing of the dogs in this case, that a police officer may not summarily execute an unlicensed dog. That's what Smith holds. And Smith, as a basis for that holding, looked to Michigan law to ascertain whether a unlicensed dog may be owned. And I'm not sure if Smith, if the panel on Smith . . . I know that was Judge White's decision. I'm not sure if the panel looked into this so much. But if you look at just the plain meaning of the statutes, both the Detroit City Code and the Michigan Dog Law of 1919, if you look at the definition of ownership, it says a person that has a right, I'm quoting, a right of property in the dog. It's right there in both statutes. The Detroit City Code essentially incorporates the same definition. Well, is it necessary for us to use the phrase unlicensed dog in writing this opinion? I would say that what I would suggest the panel do, in my humble opinion, is address the issue, hold exactly like Smith, and then dismiss the rest of the case for lack of jurisdiction. Every other issue in this case, and we did this in our letter brief, every other issue in this case, whether it's the reasonable detention that Judge Strange brought up, whether it's the unreasonable seizure of the dogs, whether it's the . . . The smell issue wasn't decided by the lower court, right? The smell? That's correct. The district judge's opinion . . . It's hard to say that we accept the position of the district court as to whether there's a genuine issue of material fact on the issue. We didn't do that. I don't know because the City of Detroit did not order the transcript of the hearing that happened, so I don't know. We can't necessarily go by what the district judge's written opinion was. That's what Johnson v. Jones says we're supposed to do, is try to figure out what the district court used as a basis for denying . . . For denying qualified immunity. And a reasonable jury could conclude that the officers were being untruthful, and there's a line of pressing from this court . . . But the idea that we lack jurisdiction is based on the idea that we can figure out what the district court . . . how the district court must have reasoned. I think it is clear from the district court's opinion that the district judge found that a reasonable jury could conclude that there was a genuine issue of material fact there, or that a reasonable jury could conclude . . . I thought I just skipped that issue. I believe he dealt with the tension . . . sorry, the unlawful stop and probable cause issue. He essentially . . . he didn't go into probable cause because he . . . the district judge Tarnow initially stated that this was an unlawful stop. The officers did not have reasonable suspicion to stop this vehicle. And then from there, didn't go into probable cause because the way he analyzed it, he said there's no reasonable suspicion. I don't need to reach that issue. Why don't . . . I mean, you argue in your supplemental brief, this argument about immediate apparency. It's got to be immediately apparent. That's true, yes. So if we agree with you on that, we don't need to get into all this business about whether it's . . . what the Michigan statute intended. I think that . . . It's kind of a quagmire that we don't need to get into, if you're right on that. Is that correct or not? I would disagree. I think the appropriate analysis here would be . . . I'm sorry. I'm saying, do we have to? I think you do. Why? I don't understand. Because . . . If it wasn't immediately apparent, you can't rely on the fact that it was contraband, so you don't need to figure out whether it was contraband. I think it would be an even-if argument where the primary position of the court would be, yes, it's . . . We're bound to go with your primary argument rather than . . . You're not humbly speaking to Drogba. So if we go with the secondary argument, we don't need to reach the first argument. But you're saying we do. I don't understand that. You could adopt the position that assuming we don't have to reach this issue . . . We do that kind of stuff all the time. Usually it's good jurisprudence to rely on the issue that's less disputed rather than the one that's . . . I don't know if it's really less disputed. It is clearly established law of the circuit. So I would not, humbly speaking . . . Well, in an unpublished opinion with a forceful dissent, I guess. And that's why I would make the unusual request of this panel, if I may, that if the panel did decide to follow Smith, that they do issue a published decision. Yeah, well, I understand, but that's up to us. No, no, of course it is. The only problem is that the city . . . If you want us to make law, I understand that. But, you know, our imperative is not to go around making law but to decide cases. That's true. If you can decide a case on an open and shut issue from our perspective, I don't know that we need to get into something that's more controversial, harder to decide, and probably ought to be decided in a case where it has to be decided. There may not be very many because you would think if these police people don't even know that it's unlicensed, they're going to be careful about shooting them. The problem, Judge Rogers, is that the cat, so to speak, or the dog, so to speak, is already out of the bag. The Smith opinion is out there. I don't see how that responds to what I said. In the sense that if you go with the contraband argument, the court has the discretion to follow any path that it chooses. But I think the path . . . It's good jurisprudence. All I'm saying is it's good jurisprudence if you have two bases for doing something to use the less controversial one, not to say, oh, we need to provide law so we're going to resolve the more controversial ones so people will know. I would leave that to the court's discretion. Let me go back to what I asked you about, whether we had to use the phrase unlicensed dog. If there's a fact issue about whether any behavior on the part of the dog would have justified a shooting, and there is a fact question, why do we need to talk about unlicensed dogs? Because the analytical framework of Smith, and again, humbly speaking, I think the analytical framework of Smith is right. You need to reach that . . . I'm sorry. The point would be that he had no basis if the finding goes in favor of the plaintiff. I mean, I think this is helpful to you. If the finding is, might be, could be, is a factual matter, that there was no basis for shooting the dog, doesn't . . . I mean, I guess the unlicensed nature of the dog becomes an argument for the officer to say, you know, I can shoot the dog even if there's no justification for doing so, and I'm not sure that's exactly the city's argument, that I can just run around shooting unlicensed dogs that are posing no harm to me. And if that's not the city's argument, and if we found there was a fact issue, why don't we stop? I'm not sure your question is that. Are you asking me in terms of . . . I'm saying if there is a . . . if we recognize a fact issue over whether there was a basis to shoot the dog argument that the city makes, unless it is an extreme argument, which I don't really understand it to be, although maybe it is, that we can go around shooting dogs that are unlicensed, even if they're wagging their tails and licking our hands. I think, because we could kind of put all those tribal issue of fact questions aside. If we address . . . Well, I don't . . . it goes against my analytical instincts. In a qualified immunity case, to brush what are obvious factual issues aside, most plaintiffs want a fact issue. And that's our . . . As a basis for denying qualified immunity. That's exactly our position, is that this entire case revolves around genuine issues of material fact. The only legal question in this case is really two questions. One is the legitimate property interest in the one unlicensed dog, and then Judge Rogers' alternative position, or however primary, secondary, however you want to phrase it, whether it was immediately apparent that the dog was contraband. That's the only legal question in this appeal. Well, actually, there's not really a legal question there either, because there's absolutely no evidence that I can see that the officer knew the dog was unlicensed. So that is . . . I mean, that's . . . And that's your position. That is exactly our position. That is exactly our . . . All I was suggesting was then you don't need to go on to the next issue. Maybe that's what you're suggesting as well. Well, I think we're sort of suggesting the same thing . . . If you're booing . . . . . . but in an approach in different ways. If I was suggesting that, obviously I would leave that to the discretion of the panel. I have a question. I understood from the record that this officer testified that he can kill any dog he wants to. That is absolutely correct. At the end of his deposition, that is pretty much exactly what he said. Both officers, Officer Bray and Officer Hurd, he was asked the question, what if the dog was just standing in the middle of the kitchen doing nothing? By the way, this was on a question posed by Detroit Corporation Counsel at the deposition. And he said, it's basically at my discretion. So his position is, as a matter of law, I have a right to kill that animal, period, right? Apparently so. And apparently some of his partners believe the same way. And mind you, these . . . That's not the position of the city, though, or of the litigants in the appeal. That . . . To be honest . . . If he has qualified immunity and there's objectively a basis for qualified immunity, the fact that he says that he would have acted if he didn't even have that basis doesn't mean that he doesn't get the qualified immunity that's objectively available to him. I think it does come into play, Judge Rogers, and I'll tell you why. Because then it speaks to his ability to ascertain whether there's an imminent threat in the context. And I know the standard is a reasonable officer. But when you have accounts diverging as to what the dogs were actually doing, coupled with the fact that you have an officer who believes that he may just similarly execute dogs . . . There you have what you just said. That makes sense. But you seem to be suggesting that the litigant, the officer as litigant, is taking that position, that they can shoot whatever dog exists. But that's not the position they take in their litigating papers. They seem to be taking that position at least with respect to the unlicensed. Well, then you should point out where in the briefs it says that rather than where he claims . . . Sure. Actually, I can point on the brief sources. If you take a look at the briefing from the city of Detroit, I believe it's page ID number 20 in their briefing. That's exactly what the city of Detroit says. I could even quote the language. It doesn't matter whether they threaten you. I could quote the language for you, Judge Rogers. The language is page 20 of their brief. This is page ID 20 in the CME-CF page. Regardless of whether the two bit bulls in the kitchen were attempting to breach the plywood barrier or were merely standing in the kitchen, given the circumstances that presented itself, both dogs had to be put down for the safety of defendants. That sounds like the position of the . . . That sounds like . . . That is found on page 20, the CME-CF page 20 of the city of Detroit's brief. That's all there is. I would say that doesn't reflect what you described as their position because it says you look at the circumstances and the argument they make about the circumstances is that the dogs can jump over the . . . Or we're . . . Just standing there . . . Or we're merely standing in the kitchen. They can shoot the dogs. That's their position in their brief. Not by their position anyway, but I see what you're saying. Yeah, they are making that position. Just quickly with respect to the . . . because my time is running out. With respect to the probable cause and the unlawful stop, there's a video of the unlawful stop. It looks like Officer Hurd was about 10 to 15 yards away from Mr. Bowman's car. He flagged him down, flashed his badge. I frankly don't understand where the reasonable suspicion was for this stop. The city of Detroit cites cases involving stops occurring at 3 o'clock in the morning, 4 o'clock in the morning, where there was some form of violent criminal activity that was ongoing in the area. That's not what we have here. With respect to the probable cause determination, I would reference the court to take a look, again, at Thibault v. Wierzewski, Miller v. Sanilac, and Green v. Throckmorton, where in those cases, although the officers were dealing with DUIs, the courts in every single one of those panels said that although we look at the facts from the viewpoint of the officer at the time, for purposes of summary judgment, after acquired evidence does come into play, in all those cases, there was no evidence that the drivers were under the influence. The panels in those cases both said that that evidence can be considered by the district court in denying qualified immunity. Thank you. Thank you. Thank you so much. Briefly, Your Honor, it's clearly not the position of these officers or the city of Detroit that you can just randomly go and shift unlicensed dogs. Well, the portion from your brief you read is on page 10, and that's pretty much what it says. He's talking about the brief from the—it's not in my appellant brief. That wasn't what you were reading from. Yes, page 10. I don't see that. Well, I guarantee you it's there. It's the last sentence on page 10 of your brief. And the deposition testimony of your officer, both of them, is very clear. We have an absolute right to shoot unlicensed animals, period. I don't think that is so, Your Honor. Okay, then we just have a disagreement about what the words of that officer were in his deposition because I think it's very clear. No need to argue. Unlicensed dogs could be their contention without saying they can just shoot pit bulls, regardless of how dangerous they are. As I understand it, your contention is, A, you can shoot them if they're threatening you, whether they're licensed or not. Yes. And, B, if they're not—this is what I went through at the beginning when I asked you what the issues were. B, if they're not threatening you but they're unlicensed, then you can also shoot them. I mean, that's got to be your point. Otherwise, it doesn't make any sense for you to be arguing about whether they're licensed or not. Your Honor, the reason why— The idea is that they don't have an interest that the Fourth Amendment protects in not being shot if they're unlicensed. That's your argument, isn't it? Our position is, Your Honor, that they're entitled to qualified immunity because it wasn't clear that an unlicensed dog, which we termed— because the Michigan Law Act does say that having an unlicensed dog is a misdemeanor. Therefore, we believe that it is contraband because it's unlawful for them to be that. That might be a stretch for you all, but really the heart of the argument is that under the qualified immunity— Your time is up. Okay. Thank you, Your Honor. I misspoke. It's at page 20 of your brief, not page 10. Okay. We appreciate the argument both of you have given, and we'll consider the case carefully.